RECEIVED

FEB 0 6 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | |
|---|---|
| **JOSEPH DARBIGNY** | **CIVIL ACTION NO. 05-1933** |
| **VS.** | **MAGISTRATE JUDGE METHVIN** |
| **COMMISSIONER OF SOCIAL SECURITY** | **BY CONSENT OF THE PARTIES** |

**MEMORANDUM RULING**

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable law, the

Commissioner's decision is **REMANDED** for consideration of new and material evidence.

*Background*

Born on August 4, 1953, Darbigny is a 53-year-old claimant with a high school education.

(Tr. 11). Darbigny has worked in the past as a carpenter and welder. (Id.).

On January 14, 2003, Darbigny filed applications for disability insurance benefits and

supplemental security income payments, alleging disability as of December 19, 2002 due to a

seizure disorder with attendant loss of comprehension, perception, and speech; right hand

trembling, blurry vision, and dizziness; congestive heart failure with attendant chest pain;

headaches; and hearing problems. His application was denied initially and on reconsideration,

and an administrative hearing was held on May 9, 2005. In an opinion dated June 21, 2005, the

ALJ found that Darbigny retains the residual functional capacity to perform a modified range of

light work. (Tr. 18). The Appeals Council denied review, (Tr. 4-6), making the ALJ's decision

the final decision of the Commissioner from which Darbigny now appeals.

## *Assignment of Errors*

Darbigny first contends that the case should be remanded for consideration of new and material evidence. He also alleges that the ALJ erred as follows:(1) in relying upon the opinion of a non-examining physician; and (2) in posing a hypothetical question to the vocational expert that did not include all of the limitations imposed by Darbigny's impairments.[1]

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

---

[1] The undersigned notes that Darbigny also asserts arguments that the ALJ erred in stating in this opinion that Darbigny "drove until one month before the hearing," and in concluding that Darbigny has been "diagnosed with chronic medication use." Because the undersigned concludes that this case should be remanded for the reasons stated herein, the undersigned does not address these relatively minor allegations of error.

### *Analysis*

In determining whether a. claimant is capable of performing substantial gainful activity,

the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f)

(1992):

1.  If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2.  A person who does not have a "severe impairment" will not be found to be disabled.

3.  A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4.  If a person can still perform his past work, he is not disabled.

5.  If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined at Step 5 that, although Darbigny suffers from the

severe impairments of obesity, disorders of the cervical spine, mitral valve stenosis, chronic

headaches, epilepsy, and transient ischemic attacks, he retains the residual functional capacity to

perform a modified range of light work. (Tr. 17-18). The ALJ considered the testimony of a

vocational expert, who identified jobs that Darbigny could perform, including assembler, lab

sample carrier, and recreational aide. (Tr. 16, 18). The ALJ concluded that Darbigny is,

therefore, not disabled.

After careful consideration of the record, the undersigned concludes that the ALJ's

decision is not supported by substantial evidence.

## I.  **Medical History**

From 2002 through 2005, Darbigny was treated for a number of impairments, including seizure disorder, chest pain, and headaches. Although the record does not contain medical records of any previously-filed application for benefits, Darbigny contends that he filed a previous application for disability benefits when he was twenty years old and that he received benefits at that time for approximately one year. Darbigny alleges that he could not support his family on the benefits received, so he went back to work for the next twenty-five years. Darbigny contends that he stopped working because of his heart condition.

On April 15, 2002, Darbigny was evaluated at UMC for symptoms of stroke and headache. He was assessed and released with a diagnosis of obesity, tobacco abuse, and congenital heart murmur. (Tr. 189). In July 2002, a physical taken for a chauffeur's driver's license was normal. (Tr. 87-88). On September 18, 2002, Darbigny went to the emergency room at Our Lady of Lourdes Hospital after having suffered an episode in which he became weak, vomited, and had slurred speech. (Tr. 91). A brain CT scan was normal. (Tr. 92). A chest x-ray, however, showed an enlarged heart and markings that indicated possible chronic hypertension. (Tr. 95). Darbigny was diagnosed with "near snycope resolved."[2] (Tr. 91).

Darbigny went to the emergency room at Dauterive Hospital in New Iberia, Louisiana on December 24, 2002 complaining of intermittent altered mental status, right hand tremors, dizziness, and headaches. At Dauterive, Darbigny underwent a chest x-ray, which showed a heart of normal size and no focal abnormalities. An emergency CT scan of Darbigny's brain was

---

[2] "Near syncope" is defined as transient lightheadedness so severe that the patient feels as if they might lose consciousness. See Journal of Academic Emergency Medicine, http://www.aemj.org/cgi/content/abstract/6/5/532-a.

likewise normal. (Tr. 216). While at Dauterive, Darbigny requested a transfer to UMC.

Although the doctors advised against a transfer, Darbigny was allowed to leave Dauterive with a

diagnosis of "multiple TIAs."[3] (Tr. 208).

On December 26, 2002 , Darbigny went to the emergency room at UMC, complaining

that he had had temporary loss of speech and hand tremors three times during the previous week.

Darbigny informed the doctors at UMC that he had been to Dauterive two days before and that

they had diagnosed him with TIAs. (Tr. 99). UMC conducted an MRI of Darbigny's brain on

December 27, 2002, which was normal. (Tr. 113-14). A bilateral carotid duplex ultrasound,

taken on December 26, 2002, was also normal. (Tr. 115). An echocardiogram taken on

December 27, 2002, which measures the rate at which the heart pumps blood, had an ejection

fraction ("EF") of 55%, which is considered normal. (Tr. 108).[4]

Darbigny was treated by Dr. Keith Ramsey for chronic headaches in 2003. On

January 13, 2003, Dr. Ramsey diagnosed Darbigny with migraines, anxiety, and new onset

seizure disorder. (Tr. 130). Dr. Ramsey examined Darbigny again on January 28, 20903 and

---

[3] A transient ischemic attack (TIA) is a transient stroke that lasts only a few minutes. It occurs when the blood supply to part of the brain is briefly interrupted. TIA symptoms, which usually occur suddenly, are similar to those of stroke but do not last as long. Most symptoms of a TIA disappear within an hour, although they may persist for up to 24 hours. Symptoms can include: numbness or weakness in the face, arm, or leg, especially on one side of the body; confusion or difficulty in talking or understanding speech; trouble seeing in one or both eyes; and difficulty with walking, dizziness, or loss of balance and coordination. See the website for the National Institute of Neurological Disorders and Stroke, http://www.ninds.nih.gov/disorders/tia/tia.htm.

[4] Ejection fraction (EF) is a measurement of the heart's ability to pump blood. It is a key indicator of heart health and is frequently used by physicians to determine how well your heart is functioning as a pump. The volume of blood pumped out by your left ventricle per beat is called ejection fraction. *A normal EF is 50 percent or higher. Ejection fraction is also a key indicator of risk for sudden cardiac arrest. An EF of 40 percent or less indicates a weakened heart muscle. Anyone with an EF of 40 or below could be at risk for dangerously fast heart rhythms that lead to sudden cardiac arrest and has a greater chance to survive if they receive an implantable cardioverter defibrillator (ICD).* Your physician may use your EF in determining your treatment options. EF is usually measured using an echocardiogram. (emphasis added). See health and wellness website Medtronic, http://www.medtronic.com/ef/faq.html.

diagnosed seizure disorder, tension headaches, and lipidemia. (Tr. 128). Dr. Ramsey prescribed

Phenobarbital for seizures, Soma for headaches, and Lipitor for lipidemia. (Id.). On February 7,

2003, Dr. Ramsey diagnosed Darbigny with headaches and panic disorder. The same

medications were continued. (Tr. 126).

On April 10, 2003, Darbigny went to the emergency room at UMC complaining of chest

pain. A chest x-ray taken that day showed evidence of cardiomegaly (enlarged heart), as well as

mild central pulmonary vascular congestive changes. (Tr. 139). An echocardiogram conducted

in August 2003 showed an EF of 60%, (Tr. 273). Another echocardiogram conducted a year later

in April 2004 showed an EF of 55%, thereby showing a steadily decreasing ability of Darbigny's

heart to pump blood. (Tr. 240).

Dr. Kenyatta Shamlin, a non-examining Disability Determinations Services ("DDS")

physician reviewing medical documents only, completed a Residual Functional Capacity

Assessment on June 17, 2003. In it, Dr. Shamlin reports that Darbigny has no exertional

limitations, can frequently balance, kneel, crouch, and crawl, and can occasionally climb ladders,

rope, and scaffolds. (Tr. 193). Dr. Shamlin further reported that Darbigny has no limitations in

the areas of manipulation, seeing, hearing, and speaking, nor does he have any environmental

limitations, except that he cannot work around hazardous machinery or heights. (Tr. 194-095).

Dr. Shamlin acknowledged that she completed the form without the benefit of a report from a

treating or examining source. (Tr. 197).

On June 3, 2004, Darbigny was evaluated by Dr. Karen Curry at Our Lady of Lourdes

Hospital in Lafayette, Louisiana for chest pain. Dr. Curry diagnosed Darbigny with ventricular

arrhythmias, mitral stenosis, and lipidemia. Dr. Curry reported that Darbigny was "disabled at this time." (Tr. 237).

In a letter dated September 12, 2005 – which was written after the ALJ rendered his decision and after the Appeals Council denied review – Dr. Curry states that Darbigny's echocardiogram EF has deteriorated to 35-45%, a result that shows an increased risk for sudden heart attack. Dr. Curry states that Darbigny is currently being treated in the hospital's heart failure clinic for chronic heart failure, as well as a history of TIA, mitral stenosis, and ventricular arrhythmias, all of which require numerous medications and ongoing monitoring, "as each process can and often does complicate the other." Dr. Curry states that Darbigny requires ongoing treatment and should be considered for disability benefits. (See Claimant's Brief in Support of Claim for Benefits, Rec. Doc. 7, Exhibit "B.").

## II.    New Evidence

The undersigned is persuaded that the instant case should be remanded for a consultative examination in light of the new evidence submitted by Darbigny with his brief on appeal. This new evidence is Dr. Curry's September 12, 2005 letter, wherein Dr. Curry states that Darbigny's EF has deteriorated to 35-45% and notes that Darbigny is currently being treated for chronic heart failure, TIA, mitral stenosis, and ventricular arrhythmias.

When new evidence becomes available after the Secretary's decision and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995), citing Latham v. Shalala, 36 F.3d 482, 483 (5th Cir.1994) and 42 U.S.C. §405(g). To justify a remand, 42 U.S.C. §405(g) requires that the evidence is "new" and

"material" as well as a showing of "good cause" for failing to provide this evidence at the original proceedings. In interpreting the materiality requirement, this court has held that "a remand to the Secretary is not justified if there is no reasonable possibility that it would have changed the outcome of the Secretary's determination." Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir.1981). Furthermore, "[i]mplicit in the materiality requirement . . . 'is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.'" Johnson v. Heckler, 767 F.2d 180, 183 (5th Cir.1985).

Here, the evidence is new, inasmuch as it was not reviewed by the ALJ or the Appeals Council because it was written by Dr. Curry after the ALJ rendered his decision and after the claimant requested review of that decision. The evidence is also material. In her letter, Dr. Curry states that Darbigny's heart condition has worsened – his December 2002 EF result going down to 35-45% in September 2005 – and that Darbigny should be considered for disability benefits. The letter also shows that as late as September 2005, Dr. Curry believed that Darbigny continued to be disabled. Thus, the undersigned concludes that the information contained in Dr. Curry's September 12, 2005 letter is material.

The undersigned also finds that the new evidence is related to the time period for which benefits were denied, inasmuch as it relates to the same impairments for which Darbigny originally sought benefits.

Finally, the undersigned concludes that there was good cause for failing to submit the evidence at the hearing level, as Dr. Curry did not write the letter until after the hearing stage of the proceedings. See Ripley, 67 F.3d at 556 (good cause existed for failure to include evidence

in initial proceedings where determination to undergo surgery had not been made by claimant
and his doctor until after that stage).

Considering the foregoing, the undersigned concludes that this case should be remanded
for further proceedings to determine the effect of Dr. Curry's letter on Darbigny's claim for
benefits. See Ferguson v. Schweiker, 641 F.2d 243, 250, n. 8 (5th Cir.1981) (remand is
appropriate upon a showing of "good cause," which includes an "inability to make a definitive
ruling concerning a claimant's disability based on the record before the court.").

### Conclusion

Considering the foregoing, the ALJ's decision is **REMANDED** for further proceedings in
accordance with these findings. On remand, the ALJ shall consider whether his conclusion is
altered in light of the evidence contained in Dr. Curry's letter. In light of Dr. Curry's letter, it
may also be necessary for the ALJ to order one or more consultative examinations to fully assess
Darbigny's brain and heart impairments and their effect on his residual functional capacity, as
well as the effect of his documented obesity. Darbigny is entitled to present additional evidence
on remand and is also entitled to another administrative hearing.

**IT IS FURTHER ORDERED** that this remand is made pursuant to sentence six of 42
U.S.C.§405(g), and, accordingly, this judgment is not a final judgment for purposes of the Equal
Access to Justice Act (EAJA). Accordingly, this remand contemplates that the Secretary will
return to court for entry of final judgment following post-remand proceedings.

Signed at Lafayette, Louisiana on February 12, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)